**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
   SHANE FRANCIS UHT,                                        :
                                                             :
                                 Plaintiff,                  :
                                                             :
                      -against-                              :          22-CV-2143 (OTW)
                                                             :
                                                             :          **OPINION & ORDER**
                                                             :
   MARTIN O'MALLEY, COMMISSIONER OF                          :
   SOCIAL SECURITY,                                          :
                                                             :
                                 Defendant.                  :
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

I.      **INTRODUCTION**

On October 2, 2017, Plaintiff Shane Francis Uht ("Plaintiff") filed an application for Title

II Social Security Period of Disability and Disability Insurance Benefits and for Title XVI

Supplemental Security Income, alleging disability beginning July 1, 2012. (ECF 18 at 135). On

November 20, 2017, each claim was denied, and Plaintiff subsequently filed a written request

for a hearing on December 5, 2017. *Id*. Plaintiff appeared at a hearing held on September 24,

2019, along with an impartial vocational expert ("VE"), Benson Kinyanjui, Ph.D. *Id*. In a decision

issued on January 3, 2020, Administrative Law Judge ("ALJ") Mark Solomon concluded that

Plaintiff was not disabled under the Social Security Act ("SSA"). *Id*.

On March 4, 2020, Plaintiff requested an appeal of the ALJ decision, and the Appeals

Council remanded the case on August 17, 2020, on the basis that the representative was not

advised of the denial of the request for postponement and that the claimant appeared by

phone without proper notice. *Id.* at 151. The remand required an update of the record,

evaluation of disability, an opportunity for a hearing, and issuance of a new decision. *Id*. at 154.

Plaintiff and a new VE, Mr. James Sarno, testified at a hearing on February 2, 2021. *Id*. at 32.

The ALJ again denied Plaintiff's application on March 29, 2021. *Id*. at 7. The Appeals Council

denied Plaintiff's subsequent request for review on January 10, 2022. *Id*. at 1.

On March 15, 2022, Plaintiff filed a Complaint commencing this action against the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging

the March 29, 2021, decision denying Plaintiff's application for a Period of Disability, Social

Security Disability Insurance Benefits, and Supplemental Security Income Benefits. (ECF 1 at 1).

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is

**GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the

decision of the Commissioner of Social Security is **REMANDED** for further proceedings pursuant

to 42 U.S.C. § 405(g).

II.    **BACKGROUND**

A.  **Plaintiff's Medical History**

Plaintiff was born on August 11, 1979. (ECF 27 at 2). His highest level of education is a

high school diploma. *Id*. Plaintiff had been working part-time as a dog walker. *Id*. Beginning in

2009, Plaintiff received treatment from several practitioners for depression, severe anxiety,

agoraphobia, alcohol, and sexual addictions, among other mental health issues. *Id*. at 7-17.

1.  *Treatment at Greenwich House*

On October 24, 2012, Plaintiff was admitted to Greenwich House for psychological

treatment. *Id.* at 7; ECF 18-3 at 530. Throughout his time at Greenwich House, Plaintiff revealed

that he had a sex addiction, low self-esteem, a history of anxiety and depression, and family history of physical and verbal abuse. (ECF 18-3 at 532). Plaintiff discussed his anxiety about getting a job and reported that he did not show up to a job opportunity because he was nervous about returning to work. *Id*. at 550. Plaintiff reported difficulty eating, sleeping, and leaving the house. *Id*. at 535, 540, 566. He also threatened to "take a knife to cut his neck," which led Greenwich House counselors to recommend his transfer to Bellevue Hospital. *Id*. at 566; ECF 27 at 8. Dr. Gabriela Hundorfean, MD, diagnosed Plaintiff with Alcohol Dependence, Cannabis Dependence, and Major Depressive Disorder. (ECF 18-3 at 566). Plaintiff was also given a Global Assessment Functioning ("GAF") score of 35, which is considered to be a major impairment. *Id*.

### 2.   Treatment at The Fifth Avenue Counseling Center

Plaintiff began treatment at Fifth Avenue Counseling Center ("Fifth Ave.") on September 1, 2013. *Id.* at 571. While at Fifth Ave., Plaintiff stated that he had days where he could not get out of bed or handle social situations. *Id*. at 583. During that time, he aborted at least one suicide attempt. *Id*. at 676. Plaintiff also detailed his sexual addiction and resulting shame. *Id*. at 614, 619. Plaintiff missed several psychotherapy appointments. *Id*. at 589, 593, 608, 612, 623. He expressed that he felt anxious travelling to sessions due to the subway and the people on it. *Id*. at 633, 640, 652, 675, 691, 697. He also had a fear of crowds, which made it difficult for him to maintain work. *Id*. at 677. Due to his failure to appear at several appointments, Plaintiff was discharged from the program on February 22, 2018. *Id*. at 702-03.

Plaintiff's doctors and therapists from Fifth Ave. submitted statements concerning their opinion of Plaintiff's limitations and his ability to obtain or maintain work. Chris Panzica, LCSW,

stated that Plaintiff's depressive and anxiety symptoms have made him unable to complete a job application process. *Id*. at 662. He was also unable to sustain sufficient earnings to support himself as a dog walker. *Id*. Panzica reported that Plaintiff had significant difficulty with interpersonal communication and that these issues have "frequently led to professional relationships ending." *Id*. Dr. Norman Lee also submitted a letter confirming that Plaintiff had been diagnosed with and undergone treatment for Major Depressive Disorder and Generalized Anxiety Disorder. *Id*. at 663. He also supported the conclusion that Plaintiff was unable to engage in meaningful work. *Id*.

### 3. Consultative Examination of Dr. Neil Madero, Psy.D.

Plaintiff was evaluated by Dr. Madero on October 23, 2017. *Id.* at 656. Plaintiff noted that he was no longer working because of his inability to control his emotions and because his past job caused him to endure panic attacks. *Id*. Dr. Madero reported that Plaintiff had several symptoms of depression, including crying spells several times per day, fatigue, diminished self-care, difficulty concentrating, and social withdrawal. *Id*. at 657. Plaintiff also experienced panic attacks at least three times a week, which were accompanied by palpitations, nausea, dizziness, difficulty breathing, trembling, and chest pains. *Id*.

As to memory and concentration, Dr. Madero reported that Plaintiff's attention and concentration were mildly impaired due to anxiety or nervousness. *Id*. at 658. When asked to do serial 7s from 100, Plaintiff made several mistakes. *Id*. He was also only able to recall one out of 3 objects after a five-minute delay. *Id*. Dr. Madero noted that Plaintiff had moderate limitation in his ability to sustain concentration and perform a task at a consistent pace. *Id*. at 660.

### 4. *Treatment at Ryan Health*

On February 7, 2018, Plaintiff completed intake at Ryan Health. *Id.* at 707. Plaintiff reported similar symptoms to those he had discussed with previous psychologists, including panic attacks, fear of going outside, difficulty sleeping and eating, and poor concentration. *Id*. at 708, 710, 713; ECF 18-4 at 763. Plaintiff set a goal of going outside at least three times a week but had difficulty accomplishing it. (ECF 18-4 at 761). He could only travel by bus or train when accompanied by a friend and could not travel more than a twenty-block radius when walking. *Id*. at 752, 761, 783, 857, 867, 879, 979. While at Ryan Health, it was also noted that Plaintiff continued to have difficulty maintaining regular appointments. *Id*. at 767, 802, 836, 862. With regards to concentration, Plaintiff mentioned that he could not watch movies or television shows due to his short attention span. *Id*. at 765.

While at Ryan Health, Gabriel Santisteban, LCSW, conducted a psychiatric assessment to be sent to the Social Security Administration for use in Plaintiff's application. (ECF 18-3 at 728). In the assessment, Santisteban diagnosed Plaintiff with Panic Disorder with Agoraphobia, ADHD inattentive type, Personality Disorder with Borderline and Avoidant Traits, and Depression in partial remission. *Id*. at 728. When answering questions as to Plaintiff's degrees of impairment, he reported that Plaintiff had a marked degree of impairment for conducting activities of daily living, a marked impairment for maintaining social functioning, and "in-between" marked and extreme impairment in concentration, persistence or pace, and completion of tasks in a timely manner. *Id*. at 729.

On August 24, 2020, Plaintiff had a psychotherapy session with Mr. Santisteban at Ryan Health, during which he noted that he was "so scared on the street" and "scared to use the

5

bathroom in the SRO." (ECF 18-4 at 1023). Dr. Kirschtein, MD, wrote that Plaintiff had many

symptoms of anxiety, depression, mania, and OCD. *Id*. at 1024.

### B.  Plaintiff's Nonmedical Records

#### 1.  *Plaintiff's Testimony Through Caseworker Vianca Mercado*

As part of his application for benefits, Plaintiff completed a questionnaire with case

worker Vianca Mercado on October 17, 2017. (ECF 18-1 at 350). Plaintiff reported he could no

longer travel and could only go outside once or twice a week because of severe social anxiety.

*Id*. at 352-54. He reported that he had become isolated since his anxiety and agoraphobia

began. *Id*. at 356. Plaintiff also noted issues with attention span and ability to follow

instructions. *Id*. at 357-58. In addition, Plaintiff reported having problems getting along with

bosses, teachers, police, landlords, or other authority figures. *Id*. at 358. Plaintiff reported

weekly, debilitating panic attacks that lasted a few hours, leaving his body frozen and reducing

his ability to do things like shop, travel, or socialize. *Id*. at 359. In a November 14, 2017,

questionnaire completed by Mercado, Plaintiff reported an inability to make appointments due

to his fear of leaving the house. *Id*. at 369. He also reported an increase in frequency of panic

attacks from weekly to daily and noted that he had quit school three times due to his inability

to finish what he started. *Id*. at 375, 377.

#### 2.  *Testimony of Vocational Expert James D. Sarno*

In the April 26, 2022, hearing, VE Sarno confirmed to ALJ Solomon that there were jobs

with no close interpersonal contact with the general public for a hypothetical plaintiff who had

no exertional limitations, who could remember, understand, and carry out instructions, who

could adapt to routine changes in the workplace, and who could make work related decisions

for SVP level 1 or 2 jobs. (ECF 18 at 59). However, when ALJ Solomon narrowed his questioning

to a hypothetical claimant unable to tolerate any work stress or adapt to routine changes, VE

Sarno confirmed that there would be no jobs for the claimant. *Id*. at 60. Similarly, if the

claimant could not have interpersonal contact with supervisors, co-workers, or the general

public, there would be no work available for the claimant. *Id*. Finally, VE Sarno confirmed that

an individual could only be off task 10% of the time and could only miss around 1 day per

month, up to six times. *Id*. at 60-61.

## III.   ANALYSIS

### A.  Applicable Law

#### 1.  Standard of Review

A motion for judgment on the pleadings should be granted if the pleadings make it clear

that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 12(c). However, a

court's review of the commissioner's decision is limited to an inquiry into whether there is

substantial evidence to support the findings of the commissioner and whether the correct legal

standards were applied. 42 U.S.C.A. § 405(g). Substantial evidence is more than a mere scintilla

but requires the existence of "relevant evidence as a reasonable mind might accept as

adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*,

362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also*

*Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of

review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not

determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a

reasonable factfinder would have to conclude otherwise." *Id*.

##### 2.  *Determination of Disability*

To be awarded disability benefits, the SSA requires that one have the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

*see also* 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation

process, where the burden rests on the plaintiff for the first four steps and only after all four

steps are satisfied does the burden then shift to the commissioner for the final step.

20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(a)(4). Second, an ALJ must find that the plaintiff's

impairment is so severe that it limits their ability to perform basic work activities. *Id*. Third, an

ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings in Appendix

1 of Subpart P ("Listings"), such that they may be presumed to be disabled. Absent that, an ALJ

must then determine the claimant's Residual Functional Capacity ("RFC"), or their ability to

perform physical and mental work activities on a sustained basis. *Id*. Fourth, an ALJ then

evaluates if the plaintiff's RFC precludes them from meeting the physical and mental demands

of their prior employment. *Id*. If the plaintiff has satisfied all four of these steps, the burden

then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and

past work experience, the plaintiff is capable of performing some other work that exists in the

national economy. *Id.*

### B.  Analysis of ALJ Solomon's Decision

Plaintiff rests his appeal upon six issues with ALJ Solomon's decision. Plaintiff claims that ALJ Solomon: (1) committed legal error by applying the grids as framework in completing his step five assessment; (2) failed to use the correct legal standard at step three of his evaluation; (3) erroneously concluded that Plaintiff was able to travel via public transportation; (4) failed to consider how any absences may impact Plaintiff's ability to engage in competitive work; (5) erroneously determined that the medical opinions of Mr. Santisteban and Dr. Kirschtein were unpersuasive; and (6) failed to appropriately consider the substantial evidence of record to sustain that Plaintiff was capable of engaging in work at all exertional levels. (ECF 27 at 24).

I find that ALJ Solomon: (1) did not fully develop the record with regard to Plaintiff's ability to travel via public transportation; (2) failed to properly consider how any absences may impact Plaintiff's ability to engage in competitive work; (3) failed to articulate supportability when finding Mr. Santisteban's and Dr. Kirschtein's opinions unpersuasive and his finding on consistency was not supported; (4) failed to properly evaluate Plaintiff's mental impairments at step three; and (5) committed legal error by applying the Grid Rules in Appendix 2 as framework at step five.[1] I also find that ALJ Solomon appropriately considered the substantial

---

[1] This legal error also does not change my outcome or analysis here, because of the determinations in steps two and three. At step five, the burden shifts to the government to prove that there are other jobs in the local or national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4). When the claimant has exertional limitations, the ALJ may refer to the Grid Rules in Appendix 2, and if the claimant's specific vocational profile is listed, they may directly apply that rule. *Id.* § 404.1569(b). If the claimant suffers from non-exertional limitations, Appendix 2 rules "do not direct factual conclusions." *Id.* § 404.1569(c).

Here, Plaintiff did not report any exertional limitations. Accordingly, the Grid Rules in Appendix 2 were not applicable and ALJ Solomon committed legal error by applying the Grid Rules in Appendix 2 in his step five assessment. *Ortiz v. Shalala*, 93-CV-4501 (WK), 1994 WL 481921, at *6 (S.D.N.Y. Sept. 2, 1994) ("[T]he guidelines are never applicable where a claimant . . . suffers only from nonexertional impairments.").

evidence of record to sustain that Plaintiff was capable of engaging in work at all physical

exertional levels, although this finding does not change the outcome.

>   1.  *ALJ Solomon failed to fully develop the record with regard to Plaintiff's ability to travel via public transportation.*

An ALJ has an obligation to develop the record. 20 C.F.R. § 404.1512. As part of that

affirmative obligation, it is their duty to "resolve evidentiary conflicts and to appraise the

credibility of witnesses." *Klemens v. Berryhill*, 703 Fed. App'x. 35, 36 (2d Cir. 2017). Moreover,

an ALJ must fill any obvious gaps in the record and must "obtain up-to-date documents in lieu

of relying on stale ones." *Agosto v. Comm'r of Soc. Sec.*, 20-CV-5640 (PKC), 2022 WL 4586304, at

*3 (E.D.N.Y. Sept. 29, 2022). The Court may find that contradictory accounts create a gap in the

record which an ALJ must fill under their obligation to develop the record. *Id.* at *3, *5.

Here, ALJ Solomon failed to fully develop the record with regard to Plaintiff's ability to

travel via public transportation, which is relevant to Step 2. ALJ Solomon found that Plaintiff

was able to travel via public transportation. (ECF 18 at 19). He relied upon Plaintiff's statements

to Case Worker Mercado and Dr. Madero's report that Plaintiff was able to use public

transportation. *Id.* at 19-20. However, there were significant amounts of conflicting evidence

throughout the record, which created a gap that ALJ Solomon was obligated to fill. *Id.* at 93-94;

ECF 18-3 at 666, 708. Furthermore, when directly presented with the evidentiary conflicts

during Plaintiff's testimony, ALJ Solomon did not resolve them.

ALJ Solomon relied upon the AFR completed by Vianca Mercado and Dr. Madero's

evaluation of Plaintiff. In the AFR, Plaintiff answered "yes" as to his ability to use public

transportation and "yes" as to his ability to travel alone. (ECF 18-1 at 354). In the subsequent

AFR, Plaintiff reported that he used public transportation, "sometimes with a friend" and

responded "yes" to his ability to go out alone. *Id*. at 372. In Dr. Madero's evaluation, he stated

that "claimant does take public transportation without assistance." (ECF 18-3 at 659).

Plaintiff's most recent testimony was that he was unable to travel on public

transportation altogether. (ECF 18 at 93). The AFR and Dr. Madero's evaluation occurred on

October 17, 2017, October 23, 2017, and November 14, 2017, almost two years before

Plaintiff's own testimony that he was unable to do so. *Id*.; ECF 18-1 at 360, 378; ECF 18-3 at 659.

On September 24, 2019, the ALJ held an oral hearing to discuss Plaintiff's claim for

Disability Insurance Benefits. (ECF 18 at 82). ALJ Solomon asked Plaintiff if he was able to travel

by himself on the bus or the subway and Plaintiff responded "no." *Id*. at 93. ALJ Solomon then

followed by asking Plaintiff, "Not at all?" to which Plaintiff again responded, "No my friends

come with me on my appointments." *Id*. at 94. After the case was remanded, during the

February 2, 2021 hearing, ALJ Solomon reviewed Plaintiff's testimony from the hearing on

September 24, 2019, asking Plaintiff to correct him if needed or to note if anything had

changed. *Id*. at 37. He reconfirmed that Plaintiff was not "able to travel on public transportation

because of agoraphobia and anxiety, that [he was] previously able to travel by [himself], but

[his] panic attacks and agoraphobia became worse." *Id*. Plaintiff confirmed ALJ Solomon's

review of the testimony, and as to any changes in his condition only reported that his anxiety

had become worse. *Id*. at 37, 40.

Plaintiff and his medical practitioners reported that Plaintiff could not travel via public

transportation. Plaintiff's treating psychotherapist, Mr. Panzica, treated Plaintiff over four years

and reported that Plaintiff wanted to work but was not "able to commute by subway, due to his

anxiety." (ECF 18-3 at 666). Plaintiff's treating physicians at Ryan Health also noted that in order

to travel, Plaintiff "require[ed] some assistance" and "report[ed] that he struggle[d] with

agoraphobia." *Id*. at 708. They also reported that friends accompany Plaintiff to his

appointments. *Id*. at 736.

> 2. *ALJ Solomon failed to properly consider how inability to take public transportation and any absences may impact Plaintiff's ability to engage in competitive work.*

In cases where absenteeism may be a hinderance to a plaintiff's ability to engage in and

maintain work, an ALJ's failure to address the issue constitutes legal error. *Guzman v. Comm'r*

*of Soc. Sec.*, 20-CV-07420, 2022 WL 2325908, at *10 (S.D.N.Y. June 10, 2022). When the issue of

absenteeism is raised in the record, through persuasive medical opinions or VE testimony, and

the ALJ fails to incorporate it into the RFC, the ALJ has committed legal error, and substantial

evidence cannot be said to support a finding of no disability. *Iglesias-Serrano v. Colvin*, 16-CV-

00418, 2016 WL 7441697, at *8 (S.D.N.Y. Dec. 23, 2016); *see also Gallagher v. Astrue*, 10-CV-

8338 (LTS) (AJP), 2012 WL 987505, at *22 (S.D.N.Y. Mar. 22, 2012).

Here, the issue of absenteeism was raised in the record and ALJ Solomon failed to

address the issue or incorporate it into the RFC. Mr. Santisteban estimated that Plaintiff would

be absent from work an average of "more than 4 days per month" due to psychiatric

symptoms.[2] (ECF 18-3 at 730). Plaintiff reported to his social workers at Greenwich house that

he was unable to show up to a job opportunity because of his fear. *Id*. at 550. Plaintiff

repeatedly failed to show up at his treatment appointments with each of his long-term treating

physicians. *Id*. at 551-52, 623, 670, 678-79; ECF 18-4 at 829. Plaintiff is often unable to leave his

---

[2] As discussed above, Plaintiff was unable to take the subway without assistance and had difficulty leaving his home.

house due to his psychiatric condition. (ECF 18-3 at 675). Moreover, VE Sarno testified that an

individual can miss no more than one day a month before they be deemed unable to work. (ECF

18 at 61).

> 3. *When finding Mr. Santisteban and Dr. Kirschtein's opinions unpersuasive,*
>    *ALJ Solomon failed to articulate supportability and consistency of that*
>    *finding.*

For claims filed on or after March 27, 2017, such as this one, an ALJ must not "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."

20 C.F.R. § 416.920c(a). Instead, the ALJ "will articulate in [their] determination or decision how

persuasive [they] find all of the medical opinions." *Id.* § 416.920c(b). When determining

persuasiveness, the ALJ must consider: (1) supportability, (2) consistency, (3) relationship of the

medical source to the claimant, (4) the source's specialization, and (5) other factors such as

familiarity with the evidence and with SSA policies. *Id.* § 404.1520c(c). "Supportability" is "the

objective medical evidence and supporting explanations presented by a medical source." *Id.* §

404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with

"evidence from other medical sources and nonmedical sources in the claim." *Id.*

§404.1520c(c)(2).

The supportability and consistency factors are the "most important," so the ALJ must

articulate how they evaluated the two factors in their consideration of the medical source's

opinions. *Id.* § 416.920c(b)(2); *Vellone v. Saul,* 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6

(S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July

6, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach

with respect to the first two factors when considering a medical opinion."). Failure to address

supportability alone is considered legal error. *Acosta Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *15 (S.D.N.Y. Jan. 29, 2021) ("Because the ALJ failed to address the supportability factor . . . the ALJ committed legal error by failing to apply the proper legal standards"). Although ALJs are generally only required to articulate their consideration of supportability and consistency, ALJs still must consider all five factors when determining a medical opinion's persuasiveness. 20 C.F.R. § 416.920c(c).

The ALJ's findings must be supported by substantial evidence, or evidence that "a reasonable mind might accept as adequate to support a conclusion." *Halloran*, 362 F.3d at 31 (quoting *Richardson*, 402 U.S. at 401). While this does not require that "every conflict in a record be reconciled," it does require the ALJ to "set forth with sufficient specificity" any crucial factors in their determination. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, when ALJ Solomon found that the opinions of Mr. Santisteban and Dr. Kirschtein were inconsistent with the record, and thus unpersuasive, he failed to articulate his determination of supportability. (ECF 18 at 21). This alone constitutes legal error.

While ALJ Solomon did articulate his determination of consistency, his finding was not supported by substantial evidence or evidence that a reasonable mind might accept as adequate to support a conclusion. The only evidence ALJ Solomon considered was a reference to Plaintiff's statements in his Adult Functioning Report from 2017 ("AFR"). (ECF 18 at 21). He made no reference to other medical opinions in the record, which were wholly consistent with the opinions of Mr. Santisteban and Dr. Kirschtein that Plaintiff had a marked degree of impairment in several areas of functioning.

Plaintiff's other treating physicians found very similar results to those of Mr. Santisteban and Dr. Kirschtein. Mr. Panzica, LCSW, from Fifth Ave. represented in a letter to the Office of Temporary and Disability Assistance ("OTDA") that Plaintiff had "significant difficulty with interpersonal skills and interpersonal communication," which hindered his "ability to perform work-related mental activities." (ECF 18-3 at 662). Dr. Lee, from Fifth Ave. was also of the opinion that plaintiff was "unable to engage in meaningful work at this time." *Id*. at 663. While at Greenwich House, Plaintiff reported difficulty eating, sleeping, and leaving the house, and Dr. Hundorfean at Greenwich House gave plaintiff a GAF score of 35, which is considered to be a major impairment. *Id*. at 535, 566. Finally, Plaintiff's own testimony in the hearing and his statements to Vianca Mercado also support the opinions of Mr. Santisteban and Dr. Kirschtein. (ECF 18 at 95; ECF 18-1 at 353, 373-74).

> 4.  *ALJ Solomon failed to properly evaluate Plaintiff's mental impairments at step three.*

At step three of the five-step evaluation process under 20 C.F.R. § 416.920, the ALJ determines whether the plaintiff's impairments meet one of the Listings in Appendix 1 of Subpart P. Paragraph B of the Listings requires the Plaintiff have either an extreme limitation in one or a marked limitation in two of the broad areas of functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself. *Id.* § 404 Appendix 1 of Subpart P(12.00)(E).

When making this determination, an ALJ's finding must be supported by substantial evidence, or evidence that "a reasonable mind might accept as adequate to support a conclusion." *Halloran*, 362 F.3d at 31 (quoting *Richardson*, 402 U.S. at 401). While this does not require that "every conflict in a record be reconciled," it does require the ALJ to "set forth with

sufficient specificity" any crucial factors in their determination. *Estrella*, 925 F.3d at 95 (quoting

*Ferraris*, 728 F.2d at 587).

Here, ALJ Solomon found that Plaintiff did not satisfy the paragraph B criteria. However,

there were significant amounts of evidence in the record that contradicted ALJ Solomon's

findings. Moreover, ALJ Solomon did not set forth with sufficient specificity crucial factors in his

determination that Plaintiff did not satisfy the paragraph B criteria. ALJ Solomon cited to entire

exhibits, many of which were over 50 pages, without mentioning specific pieces of evidence he

found convincing. (ECF 18 at 13-14).

For example, ALJ Solomon found that examinations showed that Plaintiff had only mild

limitations with complex instructions and "no documented memory impairment." *Id.* at 13. ALJ

Solomon cited to Plaintiff's *entire* record from Fifth Ave., which totaled over 120 pages; the

consultative opinion of Dr. Madero; and Plaintiff's *entire* record from Ryan Health, which

totaled over 300 pages. *Id.* He did not point to a single specific fact from any of these exhibits

that supported his finding. Meanwhile, there were significant amounts of evidence in the

record that contradicted his determination and that were not addressed by ALJ Solomon. Dr.

Madero's assessment reported that Plaintiff had difficulty remembering things, and Plaintiff

himself reported in his hearing testimony that he had short term memory loss. *Id.* at 37, 658.

There were similar deficiencies with ALJ Solomon's analysis of the other areas of

functioning as well. He found that Plaintiff only had a moderate limitation in interacting with

others, yet did not provide any citations to the record, although Plaintiff's treating physicians

found that Plaintiff had a "marked" limitation in that category due to his severe agoraphobia,

hypersexuality, social withdrawal, and borderline and avoidant personality traits. *Id.* at 13; ECF

18-3 at 728-30. Similarly, for Plaintiff's ability to concentrate, persist, or maintain pace, ALJ

Solomon reported moderate limitations and did not cite to specific evidence in the record, even

though Plaintiff's treating physicians found between a marked and an extreme degree of

impairment. (ECF 18 at 14; ECF 18-3 at 729). Finally, ALJ Solomon found that Plaintiff had only a

mild limitation in adapting and managing for himself, while his treating physicians reported a

marked limitation and the record indicated that Plaintiff was at times unable to get out of bed,

brush his teeth, eat, use the bathroom, or do laundry. (ECF 18 at 49, 51-52, 92; ECF 18-1 at 371;

ECF 18-3 at 638-39). Again, ALJ Solomon failed to support his findings with any specific facts in

the record, and in the face of a multitude of conflicting facts. (ECF 18 at 14). Finally, the ALJ did

not consider how Plaintiff's inability to take public transportation  would affect his ability to

"obtain and sustain" gainful employment. *Garcia v. Kijakazi*, No. 21-CV-1895 (ER) (RWL), 2022

WL 3442314, at *13 (S.D.N.Y. Aug. 11, 2022).

> 5.  *ALJ Solomon appropriately considered the substantial evidence of record to sustain that Plaintiff was capable of engaging in work at all exertional levels.*

When determining a claimant's RFC, an ALJ analyzes both exertional and non-exertional

limitations "*of which [they] are aware.*" 20 C.F.R. § 404.1545(a) (emphasis added). It is not the

role of the ALJ to investigate possible disabilities that are not alleged by the claimant. *Quinn v.*

*Colvin*, 199 F. Supp. 3d 692, 707 (W.D.N.Y. 2016) (citing *Leggett v. Charter*, 67 F.3d 558, 566 (5th

Cir. 1995)). Moreover, isolated comments by the claimant are insufficient to raise suspicion of

an impairment. *Crawford v. Astrue*, 13-CV-6068P, 2014 WL 4829544, at *24 (W.D.N.Y. Sept. 29,

2014).

Here, ALJ Solomon appropriately considered the substantial evidence of record to

sustain that Plaintiff was capable of engaging in work at all exertional levels. It was not within

ALJ Solomon's role to investigate or find limitations which were not in the record. *Quinn*, 199 F.

Supp. 3d 692 at 707.

However, Plaintiff has not alleged any physical disabilities or exertional impairments

relevant to the performance of these exertional activities. At the September 24, 2019 hearing,

Plaintiff explicitly stated that he "[doesn't] really have any physical issues." (ECF 18 at 92).

Plaintiff maintained this position in the Joint Stipulation, as Plaintiff's first issue with the ALJ's

decision was contingent on the fact that Plaintiff did not have any exertional limitations. (ECF

27 at 25). Accordingly, it was not ALJ Solomon's role to investigate a potential physical disability

or exertional impairment when considering Plaintiff's RFC. Nonetheless, this finding does not

affect the outcome since I have found that the ALJ erred in his consideration of Plaintiff's non-

exertional limitations.

## IV.      CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**,

the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the decision of

the Commissioner of Social Security is **REMANDED** for further proceedings pursuant to 42

U.S.C. § 405(g). This case is hereby **DISMISSED**, and the Clerk is respectfully directed to close

ECF 27, and to enter final judgment consistent with this decision and close the case.

**SO ORDERED.**


_/s/ Ona T. Wang_

Dated: March 22, 2024                                    **Ona T. Wang**
        New York, New York                     United States Magistrate Judge